## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD J. SALEVSKY, ADRIAN
M. CARLIN-SALEVSKY, and
SALEVSKY FAMILY LIMITED
PARTNERSHIP,

          Plaintiffs,

     v.

SENECA RESOURCES COMPANY,
LLC,

          Defendant.

No. 4:19-CV-02180

(Chief Judge Brann)

## MEMORANDUM OPINION

## JULY 7, 2022

## I.    BACKGROUND

Edward J. Salevsky, Adrian M. Carlin-Salevsky, and Salevsky Family Limited Partnership ("the Salevskys") sued Seneca Resources Company, LLC. The Salevskys seek to obtain declaratory relief, eject Seneca, and quiet title. They also claim that Seneca abandoned a lease and breached a contract. Seneca counterclaims for declaratory relief.

After discovery closed, Seneca moved for summary judgment. Then Seneca moved to strike the Salevskys' counterstatement of material facts. Finally, the Salevskys moved for oral argument on Seneca's two motions.

These motions are now ripe for disposition.  For the reasons below, Seneca's motion to strike is denied, Seneca's motion for summary judgment is fully granted, and the Salevskys' motion for oral argument is denied as moot.

## II.   FACTS

On June 6, 2008, Edward J. Salevsky and Adrian M. Carlin-Salevsky leased 1,005.17 acres in Tioga County, Pennsylvania to East Resources, Inc.[1]  Salevsky Family Limited Partnership also holds an interest as lessor in the lease.[2]  Eventually, SWEPI LP acquired the lease from East Resources.[3]

The lease "shall remain in force for a primary term of five (5) years from June 6, 2008 . . . and for so long thereafter as oil, gas, or other substances covered hereby are produced in paying quantities from the leased premises or from lands pooled therewith or this lease is otherwise maintained pursuant to the provisions hereof."[4]  The lease's "Shut-In Royalty" clause provides:

> If during or after the primary term of this lease, all wells on the leased premises or within a unit that includes all or a part of the leased premises, are shut-in, suspended or otherwise not producing for any reason whatsoever for a period of twelve (12) consecutive months, and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force and this lease is not otherwise kept in force by other provisions of this lease, Lessee may maintain this lease in effect by tendering to Lessor as shut-in royalty, a sum equal to five dollars ($5.00) per acre. Said shut-in royalty shall be paid or tendered to the Lessor within ninety (90) days after the next ensuing yearly anniversary of the Effective Date of this lease, and

---

[1]   Doc. 32-2 at ¶ 1.
[2]   *Id.* at ¶ 2.
[3]   *Id.* at ¶ 3.
[4]   Doc. 35-2 at 1.

thereafter on or before each yearly anniversary of the Effective Date hereof while the wells are shut-in or production therefrom is not being marketed by Lessee. Upon payment of the shut-in royalty as provided herein, this lease will continue in force during all of the time or times while such wells are shut-in but failure to properly pay shut-in royalties shall render Lessee liable only for the amount due and shall not operate to terminate this lease.[5]

The lease also provides that "[l]essee is hereby granted the right to pool or unitize the leased premises, or any part thereof, with any other property for the production of any substance covered hereby, so as to create one or more drilling or production units."[6]  Exercising this right, SWEPI recorded Declarations of Pooling and Unitization for the Marilyn L. Mitchell Trust #554 Unit,  the Propheta, R. #288 Unit, and the Salevsky, E. #335 Unit.[7]  In these respective units, SWEPI began drilling the Mitchell #554-1V, Propheta #288-1V, and Salevsky #335-1V wells.[8]

In 2012, SWEPI applied to the Pennsylvania Department of Environmental Protection for each well's "Inactive Status."[9]  So in 2013, SWEPI began issuing annual shut-in royalty checks of $5,025.85, which the Salevskys received.[10]  But the Salevskys deny that the checks were due under the lease or otherwise affected the lease's duration.[11]

---

[5]   *Id.* at 2.
[6]   *Id.*
[7]   Doc. 32-2 at ¶¶ 7, 9, 11.
[8]   *Id.* at ¶¶ 8, 10, 12.
[9]   Doc. 35 at ¶ 68.
[10]  Doc. 32-2 at ¶¶ 14–36.
[11]  Doc. 35 at ¶¶ 15–35.

In 2020, SWEPI assigned its interests under the lease to Seneca Resources Exchange Company, LLC, which has merged into Seneca Resources Company, LLC.[12]  Like SWEPI, Seneca issued a shut-in royalty check, which the Salevskys received.[13]  But again, the Salevskys deny that this check was due under the lease or otherwise affected the lease's duration.[14]

## III.   MOTION TO STRIKE

Seneca moves to strike the Salevskys' counterstatement of material facts for not responding "to the numbered paragraphs set forth" in Seneca's statement of material facts.[15]  But Local Rule 7.8 permits "a counter statement of the facts and of the questions involved and a counter history of the case."  Indeed, this Court has denied similar motions to strike plaintiffs' counterstatements of material facts.[16]

Here, "[t]he manner in which the plaintiff[s] replied to the defendant's statement of material facts was appropriate and helpful to the court in citing relevant

---

[12]   Doc. 32-2 at ¶ 39.

[13]   *Id.* at ¶¶ 41–42.

[14]   Doc. 35 at ¶ 45.

[15]   M.D. Pa. Local Rule 56.1.

[16]   *See Reid v. Sleepy's, LLC*, No. 3:14-CV-2006, 2016 WL 3345521, at *7 (M.D. Pa. June 16, 2016) ("Accordingly, Defendant's Motion to Strike Plaintiff's Counterstatement will be denied."); *Stotler v. Commonwealth of Pa. Dep't of Corr.*, No. CIV.A.3:08-CV-1441, 2010 WL 2080029, at *13 (M.D. Pa. May 21, 2010) ("[T]he Motion to Strike will be denied."); *Dolan v. Cmty. Med. Ctr. Healthcare Sys.*, No. 06CV2365, 2008 WL 11499207, at *3 (M.D. Pa. Dec. 29, 2008) ("Plaintiff, in fact, has filed a response to the Defendant's statement of undisputed facts, as required by Rule 56.1. However, Defendant seems to insinuate that Plaintiff's filing of an additional counterstatement of fact is violative of Rule 56.1 because the facts contained therein should have been incorporated into Plaintiff's Rule 56.1 response. This position is simply incorrect.").

portions of the record."[17]  I "thus find it unnecessary to strike the documents, and conclude that striking the documents and directing new filings by the Plaintiff[s] would actually only serve to prolong this litigation and would otherwise be an inefficient and more confusing way to proceed."[18]  Seneca's motion to strike is denied.

## IV.    MOTION FOR SUMMARY JUDGMENT

Seneca also moves for summary judgment in its favor on its counterclaim for declaratory relief and all of the Salevskys' claims.  Because SWEPI and Seneca timely paid the Salevskys shut-in royalties, the lease did not expire.  Accordingly, Seneca's motion for summary judgment is granted in full.

### A.    Standard of Review

The Court begins its analysis with the standard of review that undergirds summary judgment.  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[19]  The Supreme Court of the United States has advised that Federal Rule of Civil Procedure 56 "should be interpreted in a way that allows it to accomplish this purpose."[20]  Summary judgment is appropriate where "the movant shows that there is no genuine

---

[17]  *Evans v. Lowe's Home Centers, Inc.*, No. 3:04CV0439, 2005 WL 2347246, at *4 (M.D. Pa. Sept. 26, 2005) (denying motion to strike plaintiff's counterstatement of material facts).

[18]  *Ball v. Buckley*, No. 1:11-CV-1829, 2012 WL 6681797, at *2 (M.D. Pa. Dec. 21, 2012) ("Mindful of these considerations, Dr. Famiglio's motion to strike the Plaintiff's counterstatements of fact will be denied.").

[19]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[20]  *Id.* at 324.

dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[22]  A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[23]  And a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[24]

A judge's task when "ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[25]  Thus, if "the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[26]

---

[21]  Fed. R. Civ. P. 56(a).

[22]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[23]  *Clark*, 9 F.3d at 326.

[24]  *Id.*

[25]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[26]  *Id.*

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."[27]  Part of the judge's role at this stage is to ask "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[28]  In answering that question, the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[29]  The evidentiary record at trial will typically never surpass what was compiled during discovery.

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[30]  For example, while "at the motion-to-dismiss stage of proceedings a district court is obligated to accept the allegations in a plaintiff's complaint as true, it does not accept mere allegations as true at the summary judgment stage."[31]  The moving party must identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[32]  "Regardless of whether the moving party accompanies its

---

[27] *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252 (alterations in original)).

[28] *Liberty Lobby*, 477 U.S. at 252 *(*quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)) (alteration and emphasis in original).

[29] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[30] *Celotex*, 477 U.S. at 323.

[31] *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 330 (3d Cir. 2016).

[32] *Id.* (internal quotations omitted).

summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[33]

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (1) citations to particular parts of materials in the record that go beyond mere allegations; (2) a showing that the materials cited do not establish the absence or presence of a genuine dispute; or (3) a display that an adverse party cannot produce admissible evidence to support the fact.[34]

Summary judgment is effectively "put up or shut up time" for the nonmoving party.[35]   When the movant properly supports his motion, the nonmoving party must show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[36]   The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[37]   Instead, it must "identify those facts of record which would contradict the facts identified by the movant.'"[38]   Moreover, "if a party fails to properly support an assertion of fact or

---

[33]   *Id.*
[34]   Fed. R. Civ. P. 56(c)(1).
[35]   *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).
[36]   *Liberty Lobby*, 477 U.S. at 250.
[37]   *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[38]   *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).

fails to properly address another party's assertion of fact as required by Rule 56(c)" the Court may "consider the fact undisputed for purposes of the motion."[39]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[40]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[41]  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[42]

### B.    Analysis

#### 1.    Shut-In Royalty Provision

The Salevskys argue that the lease expired because Seneca did not satisfy the lease's provisions.  In Pennsylvania, "a lease is in the nature of a contract and is controlled by principles of contract law."[43]  "It is to be construed in accordance with the terms of the agreement as manifestly expressed."[44]  "The accepted and plain meaning of the language used, rather than the silent intentions of the contracting

---

[39] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).
[40] Fed. R. Civ. P. 56(c)(3).
[41] *Liberty Lobby*, 477 U.S. at 249.
[42] *Id*. at 249–50 (internal citations omitted).
[43] *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012).
[44] *Willison v. Consolidation Coal Co.*, 637 A.2d 979, 982 (Pa. 1994).

parties, determines the construction to be given the agreement."[45]  "Further, a party seeking to terminate a lease bears the burden of proof."[46]

Here, the lease provides:

> If during or after the primary term of this lease, all wells on the leased premises or within a unit that includes all or a part of the leased premises, are shut-in, suspended or otherwise not producing for any reason whatsoever for a period of twelve (12) consecutive months, and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force and this lease is not otherwise kept in force by other provisions of this lease, Lessee may maintain this lease in effect by tendering to Lessor as shut-in royalty, a sum equal to five dollars ($5.00) per acre. . . . Upon payment of the shut-in royalty as provided herein, this lease will continue in force during all of the time or times while such wells are shut-in but failure to property pay shut-in royalties shall render Lessee liable only for the amount due and shall not operate to terminate this lease.[47]

The Court has previously interpreted this very provision in three cases, ruling in lessees' favor each time.  In *Messner v. SWEPI, LP*, the plaintiff sought a "judicial declaration that the lease between the parties has terminated and is no longer in effect."[48]  But "SWEPI tendered the Shut–In Royalty payments to the plaintiff that were required under the terms of the lease."[49]  Because SWEPI "properly exercised

---

[45] *Id.*

[46] *Jedlicka*, 42 A.3d at 267.

[47] Doc. 35-2 at 2.

[48] No. CIVA4:13-CV-00014, 2013 WL 4417723, at *1 (M.D. Pa. Aug. 14, 2013).

[49] *Id.* at *2.

its right to maintain the lease in effect by tendering the shut-in royalty payment,"[50] this Court dismissed the action.[51]  And the Third Circuit affirmed.[52]

This Court also addressed the same shut-in royalty provision in *Wheeland Family Ltd. Partnership LP v. Rockdale Marcellus LLC*.[53]  There, "Rockdale and SWEPI tendered to each lessor an annual shut-in royalty."[54]  This Court therefore granted Rockdale's motion for partial judgment on the pleadings.[55]

In *Sargent v. SWEPI LP*, this Court addressed the same shut-in royalty provision yet again.[56]  There, "SWEPI tender[ed] annual $5 per acre 'shut-in' payments to Plaintiffs."[57]  So this Court granted SWEPI's motion to dismiss plaintiffs' claim that the lease had expired.[58]

Like the *Messner*, *Wheeland*, and *Sargent* lessees, the lessees here timely paid shut-in royalties.[59]  And the Salevskys received these payments.[60]  So the lease did not expire.

The Salevskys counter that the royalties did not continue the lease because the wells were not shut-in.  But the shut-in royalty provision applies when the wells "are

---

[50]  *Id.* at *5.
[51]  *Id.* at *1.
[52]  *Messner v. SWEPI, LP*, 574 F. App'x 96, 98 (3d Cir. 2014).
[53]  No. 4:18-CV-01976, 2019 WL 2868937 (M.D. Pa. July 3, 2019).
[54]  *Id.* at *3.
[55]  *Id.* at *4.
[56]  No. 4:19-CV-1896, 2020 WL 1503222 (M.D. Pa. Mar. 24, 2020).
[57]  *Id.* at *1.
[58]  *Id.* at *2.
[59]  Doc. 32-2 at ¶¶ 14–42.
[60]  *Id.*

shut-in, suspended or otherwise not producing for any reason whatsoever . . . ."[61] Because this broad language does not require the wells to be shut in, the shut-in royalty provision still applies.

The Salevskys further counter that the shut-in royalties did not relieve Seneca of its duties to develop, produce, and market hydrocarbons.  But "there is absolutely nothing in the language of the Shut–In Royalty provision that requires that [the] wells in question must produce paying quantities of gas."[62]  So Seneca did not breach the lease's duties.

### 2.   Unitization

The Salevskys also counter that because the Mitchell #554-1V Well never produced hydrocarbons, SWEPI did not properly unitize the subject property in the Mitchell 554 Unit "for production."  The Salevskys argue that this moots all shut-in royalties associated with the Mitchell 554 Unit.   This argument fails for several reasons.

First, SWEPI paid annual royalties of $5,025.85.[63]  At a rate of $5 per acre, these payments would cover the entire 1,005.17-acre property.  So SWEPI's royalty payments are associated with the entire property, not just the Mitchell 554 Unit.

---

[61]   Doc. 35-2 at 2.
[62]   *Messner*, 574 F. App'x at 98.
[63]   Doc. 32-2 at ¶¶ 14–36.

Moreover, the shut-in royalty provision applies when "wells . . . are . . . not producing for any reason whatsoever."[64]  And SWEPI paid shut-in royalties when the wells, including the Mitchell #554-1V Well, were not producing.[65]  Accordingly, the Mitchell #554-1V Well's failure to produce hydrocarbons does not create a genuine dispute of material fact.

### 3.    Abandonment

The Salevskys also argue that there is a question of fact about whether Seneca abandoned the subject property.  But the Salevsksys' abandonment claim fails as well.  Two cases explain why.

In *SLT Holdings, LLC v. Mitch-Well Energy, Inc.*, the Supreme Court of Pennsylvania addressed the equitable doctrine of abandonment.[66]  This doctrine applies when  "the leases . . .  are unclear or incomplete in their identification of duties and obligations of the parties or the remedies prescribed."[67]  "[T]here must be a determination of the inadequacy of a remedy at law before equitable relief under the doctrine of abandonment is an issue."[68]

Here, the lease expressly provides for shut-in royalties, the consequences of "not producing for any reason whatsoever."[69]  The lease also provides that "failure

---

[64]  Doc. 35-2 at 2.
[65]  Doc. 32-2 at ¶¶ 14–36.
[66]  249 A.3d 888 (Pa. 2021).
[67]  *Id.* at 896.
[68]  *Id.*
[69]  Doc. 35-2 at 2.

to properly pay shut-in royalties shall render Lessee liable only for the amount due and shall not operate to terminate this lease."[70]   Because the lease clearly and completely identifies an adequate remedy in contract law (i.e., shut-in royalties), the Salevskys' abandonment claim fails.

The Superior Court of Pennsylvania also addressed abandonment in *Alan W. v. Estate of Riemer*.[71]   There, the lessees "ceased production for repairs and did not give royalties to the [lessors] since 1998."[72]   "Accordingly, . . . there [was] no material question of fact that abandonment, and not just temporary cessation, along with nonproduction, [could] be deemed to have occurred under the law, such that the [lessors were] entitled to summary relief."[73]

Unlike the *Riemer* lessees, Seneca timely paid shut-in royalties here.[74]   The Salevskys have not adduced any evidence to the contrary.[75]   Accordingly, no reasonable factfinder could conclude that Seneca abandoned the subject property. Seneca's motion for summary judgment is fully granted.

---

[70]   *Id.*

[71]   No. 1865 WDA 2012, 2013 WL 11247586, at *4 (Pa. Super. Ct. Dec. 13, 2013).

[72]   *Id.* at *10.

[73]   *Id.*; *see also Clark v. Wright*, 166 A. 775, 778 (Pa. 1933) ("An unexplained cessation of operations under a lease the term of which depends on production, *without remuneration to the lessor*, for an unreasonable length of time, gives rise to a fair presumption of abandonment or surrender, and, standing alone and admitted, would justify the court in declaring an abandonment or a surrender as a matter of law.") (emphasis added).

[74]   Doc. 32-2 at ¶¶ 41–42.

[75]   Docs. 35, 36.

## V.   MOTION FOR ORAL ARGUMENT

Finally, the Salevskys move for oral argument on Seneca's motions to strike and for summary judgment.   Under Local Rule 7.9, "[t]he judge, in his or her discretion, may grant oral argument *sua sponte* or at the request of either or both parties."   The Court's Chambers Procedures also explain that "Judge Brann does not routinely hear oral argument on motions, but will consider it on request of counsel or if he believes it will assist him in deciding the motion."

Here, oral argument would not assist the Court in deciding Seneca's motions. Indeed, the Court already decided Seneca's motions in the previous sections. Accordingly, the Salevskys' motion for oral argument is denied as moot.[76]

## VI.   CONCLUSION

Seneca's motion to strike is denied.   But Seneca's motion for summary judgment is fully granted both as to Seneca's counterclaim for declaratory relief and as to all of the Salevskys' claims.   Finally, the Salevskys' motion for oral argument is denied as moot.   An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[76] *See In re Flat Glass Antitrust Litig. (II)*, No. 11-658, 2012 WL 5383346, at *1 (W.D. Pa. Nov. 1, 2012) ("Upon such review, I conclude that Defendants' Motion for Summary Judgment must be denied. Accordingly, Plaintiff's Motions for oral argument and Rule 56(d) discovery will be denied as moot."); *Syre v. Com.*, 662 F. Supp. 550, 555 (E.D. Pa. 1987) ("Plaintiff's motion for oral argument and decision is denied as moot.").